UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DONALD J. STANLEY,<br><br>    Plaintiff,<br><br>        v.<br><br>WARDEN,<br><br>    Defendant. | CAUSE NO. 3:19CV1097-PPS/MGG |

OPINION AND ORDER

Donald J. Stanley, a prisoner without a lawyer, has filed a motion to amend his complaint (ECF 48) and a motion seeking a preliminary injunction (ECF 50). I ordered the parties to brief these motions (ECF 51), and they are now ripe for adjudication. I'll take up the motion to amend the complaint first before turning to the request for a preliminary injunction.

Stanley is currently proceeding on a single Eighth Amendment claim against the Warden of the Westville Correctional Center in his official capacity for injunctive relief to provide him with adequate treatment for his sleep apnea. In his amended complaint, Stanley seeks to add: Warden John Galipeau in his individual capacity, Andrew Liaw, M.D., Jason Jackson, M.D., Dorthy Livers, R.N., Joshua Kuiper, R.N., Sally Nowatzke, and Wexford Medical Services. He seeks compensatory and punitive damages, in addition to injunctive relief.

At this stage of the proceedings, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The

court should freely give leave when justice so requires." *Id.* "Reasons for finding that leave should not be granted include undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007) (quotations and citation omitted). This case is currently proceeding on Stanley's original complaint, and the record does not suggest bad faith or dilatory motive on the part of Stanley. While the case has been pending for several months, it is still in its early stages, and the defendants will not be unduly prejudiced by the amendment. Accordingly, I will allow the proposed amendment.

Now it's on to screening the amended complaint. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers . . ." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, pursuant to 28 U.S.C. § 1915A, I must review the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. "In order to state a claim under [42 U.S.C.] § 1983 a plaintiff must allege: (1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law." *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006).

According to Stanley, he was diagnosed with sleep apnea in 2017, while receiving care through the Veteran's Administration, and he began treatment with a

2

Continuous Positive Airway Pressure, or CPAP, machine. On March 14, 2019, he was transferred to Westville Correctional Facility. Nurse Livers conducted a medical exam upon intake. She had Stanley fill out a medical records request to obtain his medical records from the VA, including a sleep study and records regarding his use of the CPAP machine. Six months later, on September 11, 2019, Nurse Rebac asked Stanley to fill out the medical records request form again. Stanley initiated this lawsuit in November 2019. In January 2020, Nurse Livers and Nurse Rebac asked Stanley to complete the medical records request yet again. Nurse Livers then told Stanley that the VA claimed that no sleep study was performed and that he was never given a CPAP machine. In response, Stanley requested the records himself, received the records, and provided them to Nurse Livers.

Stanley alleges that Nurse Livers' failure to successfully obtain medical records constitutes deliberate indifference. In medical cases, the Constitution is violated only when a defendant was deliberately indifferent to an inmate's serious medical needs. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005)

3

(quotation marks, brackets, and citation omitted). Furthermore, a delay in providing treatment can constitute deliberate indifference when it causes unnecessary pain or suffering. *Arnett v. Webster*, 658 F.3d 742, 752-53 (7th Cir. 2011); *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008). Here, the facts suggest that Nurse Livers may have been negligent or even incompetent in the manner in which she sought Stanley's records from the VA records; but there's no allegation that she was deliberately indifferent in the process. And neither negligence nor incompetence amount to deliberate indifference. *See Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004); *Minix v. Canarecci*, 597 F.3d 824, 831-32 (7th Cir. 2010). Therefore, I will not grant Stanley leave to proceed against Nurse Livers based on her failure to acquire relevant medical records in a timely manner.

Stanley also alleges that he received inadequate medical care for headaches, which can be related to sleep apnea. He submitted a healthcare request on September 9, 2019, alleging that he was having headaches. He was seen on September 11, 2019, by Nurse Rebac. Nurse Rebac provided Stanley with a box of Tylenol. Stanley submitted a second request for medical care for headaches on September 28, 2019. He was denied treatment. He submitted a third request on November 21, 2019. It was returned in December with a note that he was seen by Dr. Liaw on December 3, 2019. But, Stanley reports that Dr. Liaw saw him for a different health problem, not his headaches. Because Stanley did not address his headaches with Dr. Liaw, there are no facts suggesting that he was deliberately indifferent to Stanley's suffering from headaches.

4

Stanley saw Dr. Jackson in February 2020. Stanley attempted to talk with Dr. Jackson about his headaches, but the doctor became upset when Stanley raised the issue. Dr. Jackson ordered Stanley out of his office without offering any treatment for his headaches. Regarding Dr. Jackson, Stanley has provided very little detail about the nature of the exchange between them. Nonetheless, giving Stanley the benefit of the inferences to which he is entitled at this stage, he has stated a claim against Dr. Jackson.

Stanley also alleges that, when he was denied care following his September 28, 2019, request, it was because Wexford has a policy, custom, or practice of only treating certain conditions. But he did receive some treatment for headaches from Nurse Rebac, and he has not identified any particular policy, custom, or practice maintained by Wexford that violates his Constitutional rights. Therefore, he cannot proceed against Wexford on this claim.

On October 13, 2019, Stanley was moved to the Westville Control Unit (WCU), and Nurse Kuiper conducted a medical intake exam. During that exam, Stanley asked Nurse Kuiper about using the CPAP machine. Nurse Kuiper told Stanley that he would not receive his CPAP machine until a medical care provider could evaluate him. Stanley followed up with Nurse Kuiper repeatedly over a period of days and, at one point, he was told that Dr. Liaw said that "offenders in WCU are not entitled to the same quality of care as the offenders in general population." ECF 48-1 at 10. Stanley filed a request for health care asking about his CPAP on October 22, 2019, but it was unanswered. He filed a grievance on October 27, 2019. He filed another request for healthcare on October 31, 2019. Stanley then initiated this lawsuit on November 21, 2019, and Nurse Kuiper

5

responded to the request for medical care a few days later by indicating that custody staff would not permit the use of the CPAP machine due to a security risk. ECF 17-1 at 97. He filed another request for healthcare on December 5, 2019. Nurse Livers responded on Dec 17, 2019, by indicating that it is unclear what his medical request was because the issues he raised had already been addressed on other health care request forms. ECF 17-1 at 85. On January 13, 2020, Stanley was given his CPAP machine. Taking Stanley's allegations as true, as I must at this point of the proceedings, no reasonable fact finder could conclude that either Nurse Kuiper's or Nurse Livers's responses were deliberately indifferent. Dr. Liaw's comment demonstrates insensitivity to the needs of offenders in WCU, but even so, no reasonable fact finder could conclude that Dr. Liaw was deliberately indifferent to Stanley's healthcare needs. Thus, I will not permit Stanley to proceed on these claims.

On April 13, 2020, Nurse Livers demanded the power cord to Stanley's CPAP machine. Four other offenders were also required to hand over their power cords that day. Stanley did not receive any alternative treatment for his sleep apnea when the power cord was removed. He claims that this is due to a custom, practice or policy of Wexford, but he does not identify any custom policy or practice that resulted in a violation of his constitutional rights. On April 18, 2020, power cords were returned to the other four offenders but not Stanley. Stanley believes his cord was not returned because Dr. Liaw, Dr. Jackson, and Nurse Livers are deliberately indifferent to his needs, but no reasonable fact finder could conclude that Dr. Liaw or Dr. Jackson was

6

deliberately indifferent to Stanley's needs based on these allegations and the plausible inferences that can be drawn from them.

As to Nurse Livers, there are additional allegations. Stanley filed a grievance about his CPAP power cord on April 18, 2020. The response to the grievance indicated that, due to the state of emergency related to COVID-19, grievances would be processed as soon as possible. Stanley sought assistance from the court. I issued an order directing the warden to respond (ECF 30) and, the next day, Nurse Livers entered the dorm with two correctional officers. He alleges that she screamed and cussed at Stanley while demanding that he give her his CPAP's humidifier. After he had done so, she told the officers that they could return Stanley's power cord. This left Stanley still unable to use his CPAP machine. The humidifier was returned to him following another request for court intervention. Giving Stanley the inferences to which he is entitled, these facts suggest something more than mere incompetence. Thus, I will allow him to proceed against Nurse Livers on a claim of deliberate indifference. I will also permit him to proceed against the warden, in his official capacity, on an injunctive relief claim because he has both the authority and the responsibility to ensure that Stanley receives constitutionally adequate medical treatment for his sleep apnea. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011).

Stanley also asserts that he is being retaliated against because he filed this lawsuit. On January 26, 2020, Stanley was fired from his job. He started volunteering to wipe tables in the chow hall. He was, however, passed over when a position became available. He was still permitted to continue volunteering. In late December 2019,

7

Stanley's brother was transferred to Westville. He requested permission to correspond with his brother. Mr. Sonnenberg denied this request because his brother moved to Stanley's dorm. A week later, his brother was moved again. He repeatedly asked to visit his brother, but his requests were denied for a variety of reasons. Stanley remains unemployed. His caseworker told him to complete a program that no longer exists. He filed a classification appeal. Although the appeal was granted, he had not yet been assigned a job or program when he filed his motion to amend. Stanley indicates that he "feels that this has all been done by the Defendant Galipeau." ECF 48-1 at 14. "To prevail on his First Amendment retaliation claim, [Stanley] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). Stanley has not alleged facts from which it can be plausibly inferred that the filing of this lawsuit was a motivating factor in the decision to fire him from his job, limit his communication with his brother, or delay the assignment of a new job or program following his successful classification appeal. He also has not alleged that Warden Galipeau was involved in any of those decisions or even knew about them—he only suspects that he has been involved. I cannot permit him to proceed on this claim on the basis of speculation alone.

On January 13 and 14, 2020, Stanley asked how he should clean his CPAP machine. He was told to use soap and water. On January 21, 2020, he again asked how

8

to clean his CPAP machine. In response, he was seen by Nurse Cody. Nurse Cody told him that Wexford was unable to provide Stanley with soap to clean his CPAP machine. If he was indigent, he was directed to talk to custody staff. Stanley has regularly qualified for an indigent kit, which contains both a bar of soap and a bottle of shampoo, over the last eighteen months, but Stanley alleges that the indigent kit does not contain enough soap for both personal hygiene and cleaning his CPAP machine. On February 7, 2020, Stanley wrote to Caseworker Nowatzke about obtaining more soap. She indicated that the only soap she could provide was through the indigent kit. Thus, Stanley asserts that he must choose between using his allotted soap to clean his CPAP machine and using it for personal hygiene.

It is true that "the Constitution does not mandate comfortable prisons...." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). And conditions that merely cause inconveniences and discomfort or make confinement unpleasant do not rise to the level of Constitutional violations. *Adams v. Pate*, 445 F.2d 105, 108-109 (7th Cir. 1971); *Morissette v. Peters*, 45 F.3d 1119, 1123 (7th Cir. 1995). Nonetheless, because properly cleaning his CPAP machine may leave Stanley with a constitutionally deficient supply of soap for personal hygiene purposes, I will permit Stanley to proceed on a claim for injunctive relief against the warden in his official capacity. He has not, however, alleged facts suggesting that Caseworker Nowatzke was deliberately indifferent to his need, and he therefore may not proceed against her.

Finally, Stanley has filed a fifth motion seeking preliminary injunctive relief in this case. ECF 6, ECF 10, ECF 30, ECF 37, and ECF 50. The relief sought is the provision

of supplies necessary to clean his CPAP machine. Because I have allowed the "soap" claim to go forward, the next issue is whether Stanley is entitled to the preliminary injunction. I want to discuss the matter with the parties before I decide the issue. I will therefore set the matter for a telephonic conference under separate order.

But let's be honest about it. This dispute over a bar of soap would surely strike most reasonable people as ridiculous. Stanley tells me he needs soap to clean his CPAP machine. Whether that is true or not, I'm not sure. But the Office of the Attorney General isn't having any of it. They've decided that this is the place to plant the flag. They must be concerned with a slippery slope (not caused by soap evidently – it's in short supply). But wouldn't it be easier to just give him a bar of soap for heaven's sake? It's not like he's asking for a king size Tempur-Pedic pillowtop mattress. I appreciate that the AG must draw the line somewhere, and this is, after all, Mr. Stanley's *fifth* request for a preliminary injunction. But sometimes it is worth taking the path of least resistance in litigation. In either event, the preliminary injunction will be taken under advisement and a telephonic conference will, as I said, be scheduled by separate order.

ACCORDINGLY, the court:

(1) takes Donald Stanley's Motion for Preliminary Injunction (ECF 50) UNDER ADVISEMENT;

(2) GRANTS Donald Stanley's Motion to Amend Complaint (ECF 48);

(3) DIRECTS the clerk to file the proposed amended complaint (ECF 48-1);

(4) GRANTS Donald Stanley leave to proceed against the Warden of the Westville Correctional Center in his official capacity for injunctive relief to provide

Stanley with adequate treatment for his sleep apnea and adequate soap to clean his CPAP machine and provide for his personal hygiene, as required by the Eighth Amendment;

(5) GRANTS Donald Stanley leave to proceed against Dr. Jackson in his individual capacity for monetary damages on his claim that Dr. Jackson was deliberately indifferent to Stanley's pain associated with headaches during a medical appointment in February 2020, in violation of the Eighth Amendment;

(6) GRANTS Donald Stanley leave to proceed against Nurse Livers in her individual capacity for monetary damages on his claim that Nurse Livers was deliberately indifferent to his need for treatment with a CPAP machine in April and May of 2020, in violation of the Eighth Amendment;

(7) DISMISSES all other claims;

(8) DISMISSES Andrew Liaw, M.D., Joshua Kuiper, R.N., Sally Nowatzke, and Wexford Medical Services;

(9) DIRECTS the clerk to request Waiver of Service from (and if necessary, the United States Marshals Service to serve process on) on Dr. Jackson and Nurse Livers at Wexford of Indiana, LLC, with a copy of this order and the amended complaint (ECF 48-1), pursuant to 28 U.S.C. § 1915(d);

(10) ORDERS Wexford of Indiana, LLC, to provide the United States Marshals Service with the full name, date of birth, social security number, last employment date, work location, and last known home address of any defendant that does not waive service, if it has such information; and

(11) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Dr. Jackson and Nurse Livers to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on October 15, 2020.

    /s/ Philip P. Simon
JUDGE
UNITED STATES DISTRICT COURT